All right. Good morning. Mr. Purdon, we'll hear from you when you're ready. Good morning. May it please the Court. My name is Tim Purdon, and I represent the three I've reserved five minutes for my rebuttal. This Court Now, if you, the clock will continue to run, so Understood. All right. The Court, this Court should reverse the decision below as Supreme Court and Eighth Circuit precedent required WPX to exhaust its tribal court remedies on the question of the tribal court's jurisdiction through the tribal court's appellate Supreme Court before being able to bring a case in Federal court contesting that jurisdiction. I'd like to run through quickly the timeline of the facts and then get into the argument. So you think it just comes down to whether this is a plain, a case of plain lack of jurisdiction, that's what determines the need for exhaustion? I think, well, first of all, I would note that the District Court did not apply the plain No, but it's a legal standard. It is a legal standard. I think that's right. I think that the precedent is clear. You have to exhaust through tribal court, Supreme Court, tribal court, appellate court. I mean, there's no real dispute about that. Right. The question then becomes, is there an applicable exception? Right. And there's the plain, you know, basically, it's a standard of frivolousness, right? Well, it's not quite frivolous. I mean, the Dish Network case says frivolous or obvious or something to that effect. Right. You and I are on the same page. There's the plain error exception or the plainly lacking exceptions. Some of the courts have used frivolous, right? But again, I think, again, the court did not rely on that below. And additionally here, it seems to me like WPX is sort of abandoning that. They're not, because I think I know why that is. I think it's because in a case like this where you have an off-reservation energy extraction oil company coming onto the reservation negotiating a side agreement, a contract with an enrolled member, it fits pretty squarely within the first exception, creating jurisdiction under the Montana exception. It's pretty, it's in the, I think it's in the heartland of that case law. It's a contract between a tribal member and a non-tribal member. Well, but it's federally regulated, so. Right. So we have the Kodiak case, right? So if there was a Kodiak exception. Your point on exhaustion, I guess, is that you think it's at least arguable enough that it should have gone to the appellate court first. I, I. What's the real value of that in terms of this prudential exhaustion requirement? I mean, if there's any record to be made, it's already been made in the trial court, right? So I, I just, a factual record, yes, but, but that's not the only reason that, that the Supreme Court and this circuit give deference to the tribal courts and require exhaustion. It's just not, it's not just a factual record, right? We have the trial, the tribal trial court has ruled. The MHA Nation Supreme Court has not. Let's take a step back. You and I have been talking a little bit about the Kodiak case and how the federal regulatory scheme there differs from the facts of this case, the side agreement contract. It would be helpful, the circuit says, the Supreme Court says, it would be helpful to have the tribal courts completely rule on that. Let, let the tribal Supreme Court fulfill its. So, if it fell out, how would that enlighten us? Well. As we're deciding the Montana exception, how would a decision from the appellate tribal court enlighten the federal court? Well, as we're talking about tribe union versus pro-tribe, the U.S. Supreme Court says that, that one of the factors supporting this exhaustion requirement is to encourage tribal courts to explain the basis for their jurisdiction and provide the benefit of their expertise. The Supreme Court has said that is valuable. WPX wants to say it's meaningless. This review is meaningless. Well, that, that's not what the, what the courts say. And, and, you know, I'm, I'm here today for the tribe, right? I have no stake on the merits of the FedEx and WPX's breach of contract case. I'm here to represent and protect the sovereignty of the MHA nation and its tribal court system. The Supreme Court and this circuit have said what they have to say is very important because, because the United States government supports tribal government, self-government, self-determination. We get a full record in the tribal court, establishes the orderly administration of justice. Again, we want to hear from them because of their expertise. Yet here we are in a courtroom where it's like, well, I mean, we're already here. Why don't we just get to the merits? That's not what the case law says. The case law for important policy reasons from the Supreme Court to this circuit says, no, no, we're going to let that go. So they get the merits before they can go into Federal court, but they get the case. So what about the Fort Yates public school case? So Fort Yates. They didn't even go to the courts at all, the tribal courts at all, right? Right. And, and, and, but the facts there are, are very different. And the reason for that is extremely distinguishable from our situation, right? The Fort Yates case, which, you know, involved a student injured in a fight at a school, right? And the student and their family sued. So they did go to the tribal courts. They sued in, in Standing Rock, sued tribal court. The tribal court denied the motion to dismiss. The school district did not appeal, right? They went to Federal court. Similar situation here, although they did appeal. But, so that's the facts. And the circuit said, well, there's an exception to the exhaustion rule, and they, they cited the no purpose other than delay exception. And here's the, but here's the, but here's the. Well, they, go ahead. Right. Here's the. They also cited the plainly lax standard. But, but the. But they never really said it was obvious in that case. No. So it's a more. I, I think that it was more based on the, the, on purpose than delay for this reason. Well, why wouldn't that apply here if we agree that the district court. So, because in that case, the Court noted that the defendant was a State entity, State, State school district that had been hailed into, if you will, tribal court. And it said that, that Montana 1 did not apply, the first Montana exception, because a tribal entity, excuse me, a State entity cannot enter into the type of consensual arrangement contemplated by Montana. Here we have a contract between the FedEx and WPX, no smoking at the well site. And that's in the heartland of Montana 1. And that is, you're saying, different than Kodiak. Is that correct? Because the leasing agreements there were entirely governed by Federal law. Help me understand sort of the sidecar agreement. Why this is something that is more of a consensual agreement that is arguably independent of the Federally regulated right of way. Yeah. So, so again, Fort Yates, State entity, completely different from our facts. Kodiak. There is no Kodiak exception to the jurisprudence on the exhaustion rule. Right? If WPX tried to come up with a rationale for why the court did what it did, I agree, they're sort of trying to put the square peg of these facts into the round hole of Kodiak. Different regulations. Is that correct? Absolutely. And that, too much wind up, let me answer your question. Right? So, in Kodiak, you have this pervasive, almost preemptory Federal regulation of oil leases. You can't sign a lease that isn't on the form approved by the Department of Interior. Heavily regulated by the Federal Government, every aspect, royalties, drilling, all of that. Here we have a side agreement contract to a right of way, negotiated between WPX and the FedEx. It's a contract that says no smoking. And the regulations that govern these right of ways and side agreements, the right of ways themselves preserve tribal court jurisdiction. For the side agreements. Agreed. Correct. Okay. And that's clear, that the tribal court can but doesn't have to? They're not giving up jurisdiction. Right? And it's not just the text of the right of ways. It's the CFR that creates both of them preserve tribal jurisdiction versus the regulations in Kodiak, which, I mean, it's not preemption, but that's what it sounds like to me, that kind of occupies the field and says there's no room for the tribal court. So in those regulations in Kodiak, if I understand, there is no reference to tribal court jurisdiction or the parties being able to, in the language of your CFR world, remedies, you know, negotiating remedies for different courts? Let me tell you what I know for sure. I know for sure that the regs for the side agreement in this case have all kinds of language preserving tribal court jurisdiction. What the regs say in Kodiak, I don't think that's the case. That seems wrong to me, but I don't have all those at the tip of my tongue right now. So is that enough in your view to make this not the obvious lacking in jurisdiction sort of situation for purposes of exhaustion? Absolutely. Kodiak doesn't create — there is no Kodiak exception, and the Kodiak argument doesn't fit within this plainly lacking. I don't know what you mean by a Kodiak exception. I'm dying to ask you that, too. Go ahead. The point is that if Kodiak more or less controls the case, then jurisdiction is plainly lacking and there's no need for the exhaustion. But in Kodiak, they had exhausted their tribal court remedies. And I'm — No, you're missing the point. I am. I am. I am. I'm not a lawyer. Let me ask — let me answer your question. What I'm saying when I use that language is just be — WPX wants to raise up Kodiak and says, oh, this controls. But I think I've just — I hope I've just articulated an argument why that there's a question about how Kodiak impacts this case. And as such, we don't have a plainly lacking exception here. That's the point I'm trying to make. I understand that argument. Okay. That's the point I'm trying to make. This Fort Yates case never really says it was obvious in that case, I guess. Again, I think that they're more on the no-purpose-other-than-delay exception, which, again, given the State entity — I think that's different. That's a different exception. Correct. Correct. Then why wouldn't that apply if we think that WPX is right on the merits? Well, I think that, again, that case turned on the government-to-government relationship between the State and the tribe not being able to constitute a Montana consensual relationship. And so that's very different than the facts here, which is like, well, does — is this a Kodiak-style regulatory scheme or not? I know the facts are different. I'm sorry? I know the facts are different. Yeah, yeah. The legal principle, though, would be — I think — and I guess I'm not doing it very well, but I think it is a legal principle that States are different when they're hailed into tribal court than a company, an extraction company that's entered into a contract with a tribal member to say, yes, we want access to your land for development and we're going to agree not to smoke while we're there. I've reserved the last three minutes, hopefully, for my rebuttal. Any other questions before I sit down? Thank you. All right. Thank you for your argument. Mr. Forward, we'll hear from you. Thank you, Your Honors. My name is Rob Forward. I represent WPX Energy, the affilee in this case. WPX asks that this court affirm the lower court's decision to grant the preliminary injunction and bar the tribal court defendants from — excuse me, yes, bar the tribal court defendants from exercising jurisdiction over WPX in this dispute. The tribal court took a crack at it initially when the FedEx sued WPX in tribal court. WPX made a motion to dismiss. Tribal court decided that it did indeed have jurisdiction. Thereafter, WPX appealed to the MHA Nation Supreme Court. Due to delays and other reasons for appealing that decision, we also sued in federal court. Due to delays and other reasons? The length of time it would take for the MHA Nation Supreme Court to make a decision, Your Honor. It might have been a miscalculation if you end up having to exhaust, because now you've had a whole federal proceeding. We felt confident under this court's precedent in the Murphy case, the 48th Murphy case, that you just discussed with Mr. Purdon, that we felt confident that we would not have to see that appeal through. Because in that case, as you've noted, the school districts did not have to see their appeal through. In fact, they didn't even make an appeal to the tribal Supreme Court in that case. Do you agree that the question is whether the answer is plain? I do. I think on the exhaustion issue, it comes down to whether or not the tribal court plainly lacks jurisdiction over this issue. And we have to basically get into the merits of the jurisdictional issue to decide the exhaustion question. Yes. It seems like a convoluted. Judge Colleton, it's circular. It comes right back down. You put us in the position, frankly, by suing instead of exhausting. You're right. It is the law that if it's plain, you don't have to exhaust. Correct. I guess you're going to have to discuss why it's plain and not debatable or arguable. Judge Colleton, it is plain because under the Kodiak case, as well as the Chase-Andover case that this court recently issued, I believe late last year, the area of Bureau of Indian Affairs right-of-ways is extensively regulated by the federal government. Absent congressional authority, the tribal court and the tribal legislative arm has no authority over right-of-ways like this. What about the side agreements that say, that expressly identify remedies, that the federal regulation give the parties the opportunity to identify remedies in a tribal court? What work is that doing if it could never land there? I disagree slightly, Judge Kelly, that these grants of right-of-way and the consent documents and the side agreements have that in them. You don't think that there's reference to the tribal courts resolving some of the disputes in the regulations? Not in the side agreements. No, Your Honor. They are in the grants of right-of-way that, there's three basic documents. There's the grant of right-of-way, which is like the official easement document. There are the side agreements that are incorporated into the grant that are the agreements between the FedEx and WPX, the ones that we're discussing here today. And then the third one is a consent. Now, you'll see in the record, some of these are merged. In particular, the consents are sometimes merged with the side agreements into one document. The only place you start to see discussion about the jurisdiction of tribal courts is in the grant of the right-of-ways document that's signed by the BIA. That mimics the CFR on the subject. So what particular CFR regulations govern this idea of side agreements? It is, I noted it in my brief, Your Honor. Well, can you point me to the language that you rely on to say that this is just a part of the right-of-way that is entirely governed by federal law? Yes, Judge Kelley, I can do that. It's contained within the CFRs. If you take a look at... The BIA allows a lot of right-of-way applicants to negotiate conditions and restrictions and remedies for violations. Okay, where are you? I'm looking at 25 CFR 169.125A. And then there's another one, Your Honor, where they talk about those being incorporated right into the grant of the right-of-way in the CFR, which is also mimicked in the actual grants that are in this case. So help me understand your position of why there's any reference to tribal court jurisdiction within the right-of-ways, and why it wouldn't apply to the side agreements. Help me understand your argument on that, your position. My position is that that provision only preserves tribal jurisdiction that exists. It doesn't enlarge or create new tribal jurisdiction. It doesn't say that these agreements fall underneath the purview of a tribal court. It doesn't grant the tribal court jurisdiction over the side agreement issues any more than it would over, let's say, canceling the right-of-way itself. Is that been said before? In other words, is this so solid of a view of this particular regulation, and who can govern what parts of the right-of-way that it's playing? I wish it was. We wouldn't be here, to be honest with you. Aren't you relying on the language itself in the right-of-way? It says this grant does not diminish to any extent the tribe's jurisdiction. That's correct. That's in the grant, and if you read the CFR, the CFR says the same thing. Which provision of the CFR? The one that's cited there, 169.125? I don't know. I guess it says the grant will state that the tribe maintains its existing jurisdiction over the land. Is that what you mean? That's correct. Existing jurisdiction over the land, activities and persons within the right-of-way, and this grant does not diminish to any extent the tribe's power to tax, enforce tribal law, inherit power to exercise civil jurisdiction. The point is the BIA doesn't have the authority to grant the tribe's jurisdiction over this. The CFR doesn't, in fact, even do that. If you take a look later, Judge Kelly, this may explain a little bit of my position. If you take a look at CFR 169.403E, that talks about what basically is a form selection clause. It says a right-of-way grant may provide that violations will be addressed by a tribe and that disputes will be resolved by a tribal court, any other court of competent jurisdiction, or by a tribal governing body in the absence of a tribal court, or through an alternative dispute resolution method. And then this is even more confusing, but thankfully we don't have to address this necessarily. It goes on to say we, meaning the BIA, may not be bound by decisions made in such forms, but we will defer on to ongoing actions or proceedings as appropriate in deciding whether to exercise any of the remedies available to us. And so I look at that as being a form selection. The regulation allows the FedEx and the WPX people to enter into a form selection clause if they want in their side agreements. And, in fact, they could be for the entire, all of the terms of the right-of-way grant, but they didn't in this case. There was no agreement by WPX or the FedEx to take this issue to the tribal court. Counsel, the right-of-ways here you're telling us do not include the language, disputes will be resolved by a tribal court. That is correct. They don't have that naked language you know where I'm reading from. That's from E-403-E, and you say that's not in the right-of-way grants here, correct? Correct. Thank you. And in your view, it's as simple as that. It's a matter of a form selection option. In terms of whether or not the tribal court, in terms of answering your question as to whether or not this would ever see the inside of a tribal court, yes. So you wouldn't be here if that language were in this right-of-way or the side agreement is what you're saying? Correct. If WPX and the FedEx had agreed that their dispute over the smoking ban violation could take place in tribal court, we would not be here. Or if they made some other agreement, federal court, ADR. Why does, I should ask them, but in some of the quotes we bracket in the words or other court of competent jurisdiction. That's not in the actual regulation, right? I notice that's bracketed in some of the quotes. I think it comes from the grant to the right-of-way. I think it's been inserted in the grant language. That's where I remember seeing it. I'm sorry. I think it might be in 403E as well, the one that we were just looking at. Okay. Thank you. I'll ask the other side. But you didn't select a court of competent jurisdiction either. You had no form selection. You chose litigation as the form selection. Well, we didn't start the suit. It started in tribal court. We believe that that's not the proper form that should initially go through the Bureau of Indian Affairs. Anyway, there's no form selection clause. It just has to be resolved based on what the law is about jurisdiction. That's correct. Incidentally, I will say in my final time that the FedEx made a motion to concur with the tribal court defendant's briefing, and WPX, as I've indicated in our briefing, opposes that motion. They didn't appeal the order that granted the preliminary injunction. They appealed a separate order. That separate order had to do with their counterclaim. WPX asked the court to dismiss their counterclaim. The court technically denied the motion but effectively said, go to the Bureau of Indian Affairs for your counterclaim. So that was a separate order. The FedEx did not appeal the order which the tribal defendants appealed. They don't have anything on record as far as a brief regarding the appeal of the stay of the counterclaim. So to that extent, their appeal should be dismissed, and their motion to concur in the tribal court defendant's briefing here and support them should also be denied. What's the practical significance of that, of whether they're allowed to concur in the briefing? It's a procedural issue. The practical significance is that the court should not take any consideration of the FedEx position on the issues that the tribal court defendants have raised. But I mean, if the other appellants prevailed, would it affect the FedEx in any way that they were not a party? I don't know, Judge Kalten. That's a very good question. I understand the procedural arguments. I was just trying to understand if it has any practical effect or whether the other appellants would end up doing the work for them. Yeah, I understand. Yeah, it's odd. You know, the rule of procedure was amended recently to say that even if you designate only an order, as long as it merged into the judgment, then you're allowed to appeal the whole judgment, including all orders that merged into it. I wonder if that has any application here. This is a little bit of an unusual case because I don't know if there's even a judgment. There's just an order. Right. It's an order. The order granting the preliminary injunction is certainly considered a final order for appeal. But it's not a – I don't know if it's a judgment into which this other order that the FedEx appealed merged. Well, the other order is an interlocutory order, and I don't think it's final. That's the other problem with their appeal is that an order staying the case, staying that part of the case, is not a final order. And so even under that part of procedural law, I don't believe that order is appealable and, by consequence, shouldn't be able to merge into the preliminary injunction order. Thank you. Very well. Thank you for your argument. I'll hear a rebuttal. Mr. Perdon. Thank you. I think two points. First, on this idea that there was – that they had to rush to the Federal court because of some delay in the tribal court appeal, the tribal trial court's order saying we have jurisdiction was in June of 2021. And they appealed that to the MHA Supreme Court. They filed their case in Federal district court within a month. So it's not as if the appeal had been pending some lengthy amount of time before they were concerned about the delay and they ran to Federal court. I just think that's important in the facts. And then the second point, again, if we step back and think about the policy behind exhaustion, and I mentioned this in my direct – in my initial argument under National Farmers Union, we want to encourage the tribal court to explain the basis for its jurisdiction and provide the benefit of their expertise. Does – we have this idea here that – what's the role of CODIAC? How does it impact this case? What is the difference in the CFR schemes that govern a right-of-way and side agreement and leases themselves in CODIAC? The policy is clear from the Supreme Court and the circuit that this case and that merits determination would benefit from the expertise of the sovereign nation, the tribal court. That's why we have these requirements. So to the extent that we're deciding whether or not those disputes about CODIAC and the CFR scheme is plainly – shows a plainly lacking tribal jurisdiction, which I think it's not plainly lacking. I think it's arguable at the least. I think there's clear jurisdiction under Montana, but at the least it's arguable. This case needs to be remanded, dismissed without prejudice, and have the MHA Nation Supreme Court complete the tribal process so that the federal courts can have the benefit of their expertise and we can execute these various policies in these Supreme Court and Eighth Circuit cases, which are important. It's important to the sovereignty of the MHA Nation. Have nothing further? If there's no questions. But what about judicial economy? Well, I don't think that the party – Is that really what was going on in that Fort Smith case? I mean, the whole opinion addresses the merits, and then they come around at the end and say, well, there is this exhaustion. Right. Since we already ruled on the merits, we don't have to – Orderly administration of justice, which is one of the factors here, would counsel against WPX bringing this case. I don't think they should be rewarded for that. And I think that's the catch-22, if you will, with what you're saying. Well, you know, we're here. Let's decide it. I mean, I understand the federal appeal in terms of judicial economy, but the orderly administration of justice here is what favors the remand and the exhaustion. Nothing further? I thank you for your time. We ask that the district court be reversed. Thank you. All right. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will follow.